# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**MANKO WINDOW SYSTEMS, INC.,**

    **Plaintiff,**

    v.

**PRESTIK, a Division of 2089310 Ontario, Inc.,**

    **Defendant.**

Case No. 16-2818-JAR-JPO

## MEMORANDUM AND ORDER

This case arises out of the sale of flat glass washing machines. Plaintiff Manko Window Systems, Inc. ("Manko") alleges that it purchased two washing machines from Defendant Prestik, and that upon delivery of one of the washers to Manko's Des Moines, Iowa facility, Manko immediately experienced problems with the washer. As a result of the allegedly defective nature of the washer and Prestik's inability to repair the machine, Manko brought this action, alleging claims of breach of contract, breach of warranty of fitness for a particular purpose, breach of warranty of merchantability, breach of express warranty, and unjust enrichment. This matter comes before the Court on Prestik's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 5). The motion is fully briefed and the Court is prepared to rule. For the reasons explained in detail below, the Court grants Prestik's motion to dismiss.

**I.    Standard**

Manko has the burden of establishing personal jurisdiction over Prestik.[1] In the absence of an evidentiary hearing, as in this case, the plaintiff must make only a prima facie showing of

---

[1]*Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

jurisdiction to defeat a motion to dismiss.[2] "The Plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[3] Allegations in a complaint are accepted as true if they are plausible, non-conclusory, and non-speculative, to the extent that they are not controverted by submitted affidavits.[4] When a defendant has produced evidence to support a challenge to personal jurisdiction, a plaintiff has a duty to come forward with competent proof in support of the jurisdictional allegations of the complaint.[5] The court resolves all factual disputes in favor of the plaintiff.[6] Conflicting affidavits are also resolved in the plaintiff's favor, and "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[7] "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[8]

## II. Facts

Drawing all reasonable inferences in favor of Manko, the following relevant facts are taken from the Complaint, and the exhibits attached to the parties' briefs. The Court does not consider any general or conclusory allegations not supported by affidavits or other competent

---

[2] *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[3] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010) (citing *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007)); *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[4] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989); *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985).

[5] *Pytlik*, 887 F.2d at 1376; *see also Shrader*, 633 F.3d at 1248.

[6] *Dudnikov*, 514 F.3d at 1070.

[7] *Behagen*, 744 F.2d at 733.

[8] *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

evidence, and has resolved all factual disputes in Manko's favor.

Manko is a Kansas corporation with its principal place of business in Manhattan, Kansas. Manko is a glass distributor furnishing wholesale glass, windows, finished glass products, and other products to contract glazing installers. Prestik is a non-resident company and a division of Ontario, Inc. Prestik is organized under the laws of Canada, with its Headquarters in Ontario, Canada. Prestik specializes in the design and manufacture of flat glass washing machines and equipment for the insulating glass industry.

Prestik operates a website, accessible at www.Prestik.com. Prestik's website does not have the capability to take purchase orders. Customers interested in Prestik products must contact Prestik by phone, fax, or using the Inquiry Form on the website. Since 2012, Prestik has employed between four and six individuals at any given time. Prestik has no place of business or employees in Kansas or the United States. Prestik is not licensed to do business in Kansas, does not advertise or solicit business in Kansas, and does not pay taxes in Kansas.

On September 5, 2014, Manko contacted Prestik and expressed interest in purchasing two Horizontal Glass Washers, model P96-8-8. Prestik sent a price quote later on September 5 to Manko's Manhattan, Kansas office for its proposed purchase of the two washers. On October 3, 2014, Manko sent a purchase order to Prestik from its Manhattan, Kansas office, requesting to buy two washers. Manko specified in the purchase order that the first washer must arrive at Manko's Des Moines, Iowa facility before February 1, 2015, and that the second washer would be sent to Manko's Manhattan, Kansas facility on a date to be determined later. Prestik responded to Manko that same day by sending an invoice for the sale of two washers. The invoice confirmed Prestik would ship the first washer by January 28, 2015, and would store the second washer until March 15, 2015 at no cost. Prestik would request payment of the remaining

amount once the second washer was finished.  The total payment price for the two washers was $205,000.  The invoice also instructed Manko to wire a deposit of $102,500 to Prestik's bank account in Ontario, Canada, and included all pertinent bank information to complete the deposit.  Manko wired $102,500 from Manhattan, Kansas to Prestik's bank account on October 31, 2014.  As part of the sale, Prestik provided Manko a Standard Condition of Sales document, which stated in relevant part that "[n]o order shall be binding until accepted in writing by the seller at its Burlington, Ontario office or at its plant handling and processing such orders."[9]

On February 20, 2015, Manko paid Prestik an additional $51,250, plus freight charges totaling $3,187.  Prestik shipped the first washer to Manko's Des Moines facility.  Manko accepted and installed the washer.  The first washer experienced multiple issues and failed certification testing conducted by Manko's primary glass supplier.  Prestik sent a representative to repair the first washer, but the repairs were ultimately unsuccessful.  Following these unsuccessful attempts to repair the first washer, Manko made repeated efforts to contact Prestik to discuss the return of the first washer and the return of all money paid by Manko.  Prestik did not respond, and Manko suspended performance of the contract and filed this lawsuit.

Before the transaction involving the sale of the washers, Manko engaged in two other commercial transactions with Prestik.  In March 2014, Manko entered into an agreement with Prestik to obtain a Bromer Edge Deletion Machine.  In July 2014, Prestik agreed to sell some of Manko's used equipment, receiving a ten percent sales commission from Manko.  Manko negotiated and paid for each of these transactions through its Manhattan, Kansas office.

---

[9] Doc. 6-1 at 3.

**III.    Discussion**

Federal courts follow state law "in determining the bounds of their jurisdiction over persons."[10] To establish personal jurisdiction over a defendant, a plaintiff must show that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process.[11] The Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, therefore the Court proceeds directly to the constitutional analysis.[12]

The due process analysis is comprised of two steps. First, the court must consider whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there."[13] If the requisite minimum contacts are found, the Court will proceed to the second step in the due process analysis—ensuring that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'"[14]

**A.    Minimum Contacts**

"Minimum contacts" can be established in one of two ways, either generally or specifically for lawsuits based on the forum-related activities:

> General jurisdiction is based on an out-of-state defendant's "continuous and systematic" contacts with the forum state, and does not require that the claim be related to those contacts. Specific jurisdiction, on the other hand, is premised on something of a *quid pro quo*: in exchange for "benefitting" from some purposive

---

[10]*Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014).

[11]*Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

[12]*Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (citing *Volt Delta Res., Inc. v. Devine*, 740 P.2d 1089, 1092 (Kan. 1987)).

[13]*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159–60 (10th Cir. 2010) (citing *OMI Holdings, Inc.*, 149 F.3d at 1091).

[14]*See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.[15]

Manko does not allege general jurisdiction, but instead alleges that Prestik had minimum contacts with Kansas based on specific jurisdiction. The specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation."[16] To establish minimum contacts, the "defendant's suit-related conduct must create a substantial connection with the forum State."[17] One aspect of this requirement is that the Court must look to "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[18] The Supreme Court has provided the following examples of instances where defendants' suit-related contact has been sufficient to establish a substantial connection:

> entering a contractual relationship that "envisioned continuing and wide-reaching contacts" in the forum State, *Burger King*, *supra*, at 479–480, 105 S. Ct. 2174, or by circulating magazines to "deliberately exploi[t]" a market in the forum State, *Keeton*, *supra*, at 781, 104 S. Ct. 1473. And although physical presence in the forum is not a prerequisite to jurisdiction, *Burger King*, *supra*, at 476, 105 S. Ct. 2174, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact. *See, e.g.*, *Keeton*, *supra*, at 773–774, 104 S. Ct. 1473.[19]

Manko argues that Prestik established minimum contacts with Kansas by transacting business with Manko, a Kansas resident. While it is true that Prestik entered into a contract with Manko for the sale of two glass washers, merely entering into a contract with a resident of Kansas does not suffice to establish minimum contacts.[20] To determine if a defendant has

---

[15]*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008) (citations omitted).

[16]*Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

[17]*Id.* at 1121–22.

[18]*Id.* at 1122.

[19]*Id.*

[20]*TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

established minimum contacts by contracting with a resident of the forum state, the Court looks to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."[21] The contract "must have a 'substantial connection' with the forum state."[22]

Manko argues that although it initially reached out to Prestik, "Prestik's subsequent communications with, offer to, and acceptance of payment from, Manko shows that Prestik availed itself of the privilege of conducting activities and consummating transactions in Kansas."[23] Manko notes that part of the contract would be performed in Kansas. Manko also points to the following two transactions between the parties that occurred before the transaction at issue in this case: (1) Prestik agreed in March 2014 to obtain a Bromer Edge Deletion Machine for Manko, and Manko paid Prestik for this transaction through its Manhattan, Kansas office; and (2) Prestik agreed in July 2014 to sell three pieces of equipment on Manko's behalf, and Prestik received a ten percent commission for this sale.

Manko cites two cases from this District, *Serrano, Inc. v. SLM International, Inc.*[24] and *Oxford Transportation Services, Inc. v. MAB Refrigerated Transport, Inc.*,[25] in support of its argument that Prestik has sufficient contacts with Kansas to support personal jurisdiction. The defendant in *Serrano*, a Canadian corporation, initiated a contract with the plaintiff, a corporation registered in Kansas.[26] "During the course of negotiations, defendant made numerous communications with [plaintiff] by mail, telefax, and telephone at [plaintiff]'s Kansas City,

---

[21]*TH Agric. & Nutrition, LLC.*, 488 F.3d at 1288 (quoting *Burger King Corp.*, 471 U.S. at 479).

[22]*Id.* (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

[23]Doc. 9.

[24]No. 93-24968-EEO, 1994 WL 68510 (D. Kan. Feb. 18, 1994).

[25]792 F. Supp. 710 (D. Kan. 1992).

[26]*Serrano*, 1994 WL 68510, at *5.

Kansas office."[27] The contract was formed and agreed to by the plaintiff in Kansas, and the defendant delivered the final version of the contract to the plaintiff's place of business in Kansas.[28] The contract included a choice of law provision specifying that Kansas would govern all rights and obligations.[29] Based on all these facts, the court found that the defendant had sufficient minimum contacts to support jurisdiction.[30]

In *Oxford Transportation*, the non-resident defendant entered into a contract with the Kansas plaintiff "with full knowledge that the plaintiff was a Kansas corporation and that the contract would be performed at least in part in Kansas."[31] The defendant telephoned the plaintiff's offices in Kansas on several occasions, and the defendant accepted payment from the plaintiff's Kansas office. The court held that "[u]nder these circumstances, [the plaintiff] 'should reasonably have anticipated being haled into court in the State of Kansas when it entered into a contract with a Kansas corporation.'"[32]

*Serrrano* and *Oxford Transportation* are distinguishable from this case for a number of reasons. In *Serrano*, the defendant initiated the contract, the defendant "made numerous communications" with the plaintiff by various modes of communication, and the contract contained a provision designating Kansas law as the governing body of law.[33] The court cited each of these facts in finding that the defendant had minimum contacts with the forum, but these facts are not present here.

---

[27]*Id.*
[28]*Id.*
[29]*Id.*
[30]*Id.*
[31]792 F. Supp. at 713.
[32]*Id.*
[33]*Serrano*, 1994 WL 68510, at *1.

In *Oxford Transportation*, the defendant telephoned the plaintiff's offices in Kansas "on several occasions."[34] Here, by contrast, the parties appear to have had only one telephone conversation regarding the transaction, and the remaining communications from Prestik concerning the sale were limited to a price quote and an invoice.[35] More importantly, *Oxford Transportation* is a twenty-five-year-old case that placed significant weight on the fact that the defendant entered into a contract with a Kansas corporation, quoting from a case that pre-dated the Supreme Court's decision in *Burger King v. Rudzewicz*.[36] But in the intervening years since *Oxford Transportation*, the Tenth Circuit, relying on *Burger King*, has explained that "[a]n individual's contract with an out-of-state party cannot, standing alone, establish sufficient minimum contacts with the forum state."[37] Thus, the Court is not persuaded that *Oxford Transportation*, which relied heavily on the existence of the defendant's contract with a Kansas party in finding minimum contacts, controls the outcome in this case.

A more recent Tenth Circuit case, *Benton v. Cameco Corp.*,[38] provides better guidance for the Court's analysis of minimum contacts in this case. In *Benton*, the plaintiff—a Colorado resident—and the Defendant—a Canadian corporation—entered into a series of approximately two dozen transactions concerning the sale of uranium between 1988 and 1996.[39] Each

---

[34]*Oxford Transportation*, 792 F. Supp. at 713.

[35]The parties did communicate on a limited basis by email regarding the two transactions that preceded the transaction at issue here.

[36]*Id.* at 713 (quoting *Carrothers Constr. Co. v. Quality Serv. & Supply*, 586 F. Supp. 134, 137 (D. Kan. 1984)) ("Under these circumstances, [defendant] 'should reasonably have anticipated being haled into court in the State of Kansas when it entered into a contract with a Kansas corporation, requiring that invoices be sent to the Kansas corporation for payment, and the acceptance of payment from the Kansas corporation.'").

[37]*TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)); *see also Mktg. Grp., Inc. v. Success Devel. Intern., Inc.*, 41 F. Supp. 2d 1241, 1244 (D. Kan. 1999).

[38]375 F.3d 1070 (10th Cir. 2004).

[39]*Id.* at 1073.

transaction involved separate, independent contractual negotiations.[40] In 1994, the parties entered into a separate memorandum of understanding ("MOU") concerning future uranium sales and trading between the parties.[41] After the parties signed the MOU, members of the defendant's staff spent two days in Colorado conducting due diligence review of the plaintiff's supply contracts. In December 1994, the defendant's board of directors met and declined to approve any of the transactions listed in the MOU.[42] The plaintiff thereafter filed suit in the District of Colorado to recover for the alleged breach of the MOU.[43]

The defendant filed a motion to dismiss for lack of personal jurisdiction, which the district court granted.[44] On appeal, the Tenth Circuit found that the defendant's contacts were sufficient to meet the minimum contacts standard based on the following facts:

> [1] [the defendant] entered into [the MOU] with a Colorado resident that set forth the key terms of a joint venture;
> [2] [the defendant] would have partially performed the transactions contemplated by the MOU in Colorado in that it would have made payments to [the plaintiff] in Colorado;
> [3] [the defendant] sent employees to Colorado to conduct a due diligence review of [the plaintiff]'s business in connection with the MOU;
> [4] [the defendant] sent significant correspondence to [the plaintiff] in Colorado; and
> [5] [the defendant] committed a tortious act by interfering with [the plaintiff]'s business relationships, the effects of which were suffered in Colorado.[45]

The court emphasized that the agreement at issue "centered around the continuing business relationship between" the plaintiff and the defendant, and that the parties engaged in significant

---

[40]*Id.*

[41]*Id.*

[42]*Id.*

[43]*Id.*

[44]*Id.*

[45]*Id.* at 1076.

communication in negotiating the contract.[46] The court also explained that the fact that the defendant sent several of its employees to the plaintiff's office in Colorado to conduct the due diligence review was "[e]ven more significant to our minimum contacts analysis."[47]

Ultimately, the court found that although "this is a very close case" and that "[t]he facts of this case place it in the grey area of personal jurisdiction analysis," "we hold that there are enough contacts between [the defendant] and Colorado to establish what may be accurately termed 'minimum' contacts."[48] The court, however, granted the defendant's motion to dismiss for lack of personal jurisdiction because it found the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.[49]

This case involves facts that are similar to those in *Benton*. Like in *Benton*, Prestik, a Canadian company, entered into a contract for a transaction with Manko, a forum-state corporation. Furthermore, Prestik sent correspondence to Manko in Kansas, the contract provided that it would be partially performed in Kansas, and Prestik allegedly breached the contract, the effects of which were suffered in Kansas.[50]

But this case is also different from *Benton* in important ways. First, Manko points to two transactions with Prestik in March and July 2014 that predated the transaction at issue in this case to demonstrate the extent of Prestik's contacts in Kansas. But these transactions do not evidence the same type of sustained business relationship at issue in *Benton*, which involved dozens of transactions over an eight-year period.[51] Second, although Prestik sent

---

[46]*Id.* at 1077.

[47]*Id.*

[48]*Id.* at 1076–77.

[49]*Id.* at 1078–80.

[50]*See id.* at 1076 (listing same facts in support of finding "minimum contacts" requirement met).

[51]*Id.* at 1073.

11

communications to Manko in the form of a price quote and an invoice, these communications do not rise to the same level of "significant communications" in *Benton*, which included both telephone conversations and correspondence by mail.[52] Finally, unlike in *Benton*, Prestik did not send any of its representatives to the forum state in the course of negotiating the contract or at any other time. As these distinctions illustrate, Prestik's contacts with Kansas are more tenuous than those at issue in *Benton*.

The court in *Benton* explained that the facts there made it a "close case" and placed the case in "the grey area of personal jurisdiction analysis."[53] Thus, the existence of the requisite minimum contacts is even more questionable here. But it is also evident that Prestik engaged in a business relationship with Manko, which operates its business from Kansas.[54] Additionally, "[t]his is not a case in which the defendant's only contacts with the forum resulted from 'the mere unilateral activity' of the plaintiff."[55] Accordingly, while the contacts here are thin, the Court finds that in this particular case Manko has demonstrated that Prestik has sufficient "minimum contacts" with Kansas such that it should reasonably anticipate being haled into court here.[56]

B.     **Traditional Notions of Fair Play and Substantial Justice**

Having found the requisite minimum contacts exist, the Court turns to whether the exercise of jurisdiction in this case would be reasonable, that is, whether it would "offend

---

[52]*Id.* at 1077, 1082.

[53]*Id.* at 1076–77.

[54]*Id.* at 1077 ("By engaging in a business relationship with [the plaintiff], who operates his business from Colorado, [the defendant] 'purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'").

[55]*Id.* at 1078 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)).

[56]*Id.* at 1075 (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

traditional notions of fair play and substantial justice."[57] Once a plaintiff has satisfied its minimum contacts burden, the burden shifts to the defendant to demonstrate that exercising personal jurisdiction would be unreasonable.[58] "Such cases are rare."[59] This inquiry typically involves the following five considerations:

> (1) The burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.[60]

The analyses of minimum contacts and reasonableness are complementary, such that:

> The reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts].[61]

As explained above, Prestik's contacts with the forum state are weak.[62] Thus, Prestik need not make a strong showing of unreasonableness.[63] With these considerations in mind, the Court now turns to the five factors as applied to this case.

### 1. Burden on Defendant

While not dispositive, "the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction."[64]

---

[57]*Id.* at 1070 (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086 (10th Cir. 1998)).

[58]*Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013).

[59]*Id.* (citing *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009)).

[60]*Id.*; *Benton*, 375 F.3d at 1078.

[61]*Benton*, 375 F.3d at 1079 (quoting *OMI*, 149 F.3d at 1092); *TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007) (quoting same).

[62]*See supra* Part III.A.

[63]*TH Agriculture*, 488 F.3d at 1292.

[64]*Benton*, 375 F.3d at 1079 (quoting *OMI*, 149 F.3d at 1091).

"When the defendant is from another country, this concern is heightened and 'great care and reserve should be exercised' before personal jurisdiction is exercised over the defendant.'"[65]

The Court finds that the burden on Prestik is significant. Prestik is a Canadian corporation, with no office or property in Kansas, it is not licensed to do business in Kansas, and has no employees in Kansas.[66] Furthermore, as Prestik notes, it provided Manko a Standard Condition of Sales document in the course of negotiating the sale, which stated that the order was binding when accepted by Prestik in Ontario, Canada. Under Kansas law, a contract is considered "made" where the last act necessary for its formation is done, and the law of the state where the contract is made governs the dispute.[67] Based on the Condition of Sales document, and because Prestik's sending of the invoice was the last act necessary for the formation of the contract, Canada law appears to govern this dispute.[68] Thus, in order to litigate the case in Kansas, Prestik will not only have to travel outside its home country, but "will also be forced to litigate the dispute in a foreign forum unfamiliar with the Canadian law governing the dispute."[69] This factor therefore weighs heavily in Prestik's favor.

---

[65]*AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1061 (citing *OMI*, 149 F.3d at 1091).

[66]*See Benton*, 375 F.3d at 1079 (citing *OMI*, 149 F.3d at 1096).

[67]*Gen. Elec. Cap. Corp. v. Dodson Aviation, Inc.*, 286 F. Supp. 2d 1307, 1312 (D. Kan. 2003) (citing *Hall Kimbrell Envtl. Servs., Inc. v. Archdiocese of Detroit*, 878 F. Supp. 1409, 1414 n.3 (D. Kan. 1995)); *Clements v. Emery Worldwide Airlines, Inc.*, 44 F. Supp. 2d 1141 (D. Kan. 1999) ("Kansas law is clear, on issues of contract construction, the law of the state where the contract was formed governs.").

[68]Manko makes the conclusory statement that it "believes that Kansas (not Canadian) law governs this dispute," but it provides no additional facts or authority to support this assertion. Doc. 9 at 11. Accordingly, based on the authority and analysis set forth above, the Court assumes for purposes of this motion that Canada's substantive law governs this dispute.

[69]*OMI*, 149 F.3d at 1096.

### 2. Forum State's Interest in Adjudicating the Dispute

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."[70] The forum state also has an interest where resolution of the dispute requires general application of the state's laws.[71] Here, Kansas undoubtedly has an interest in providing a forum for Manko to litigate this dispute and seek redress for alleged injuries caused by Prestik, a non-resident. But as explained above, Canadian law will govern this dispute, and thus the state's interest is not as strong as in a case where Kansas law would govern. Additionally, although Manko suffered the effects of the injury in Kansas, the injury actually occurred in Iowa when the washer in question revealed its defects and Prestik was unable to repair it. Based on these considerations, the Court finds that Kansas has a small interest in providing Manko a forum to litigate this dispute. This factor thus weighs slightly in favor of Manko.

### 3. Plaintiff's Interest in Convenient and Effective Relief

The third reasonableness factor turns on whether Manko can receive convenient and effective relief in another forum. "This factor may weigh heavily in cases where a plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit."[72] Manko does not argue that another forum's laws would preclude convenient and effective relief, but instead asserts that "[t]he economic realities associated with litigating a relatively small case in a distant forum (such as Canada) would

---

[70]*Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 483 (1985)).

[71]*Id.*; *Benton*, 375 F.3d at 1079.

[72]*Benton*, 375 F.3d at 1079 (quoting *OMI*, 149 F.3d at 1097).

quickly foreclose Manko's ability to obtain convenient and effective relief in this matter."[73] As the facts above illustrate, Manko has at least one facility in Iowa and it reached out to Prestik in Canada to engage in a business transaction. Manko has already reached into Iowa and Canada to conduct business, and thus the Court is not convinced that litigating in either of these forums would unduly burden Manko.

Certainly, the Court recognizes that litigating this case in Kansas would be *most* convenient for Manko, and that the "economic realities" of this case might place a strain on Manko if it is forced to litigate elsewhere. But given Manko's previous interactions with other possible forums for this case, the Court finds that this factor weighs only slightly in favor of Manko.

### 4. Interstate Judicial System's Interest in Obtaining Efficient Resolution

This fourth factor asks "whether the forum state is the most efficient place to litigate the dispute."[74] "Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation."[75] Here, the witnesses will be spread across Iowa, Canada, and Kansas. The injury occurred in Iowa, and the allegedly defective machine originated in Canada. Furthermore, the Court assumes that Canada's substantive law governs this case. The Court is not persuaded that jurisdiction is necessary to prevent piecemeal litigation, and Manko does not advance this argument. Thus, because the witnesses are spread across three jurisdictions, the wrong occurred in Iowa, and Canada's substantive law governs, the Court finds that this factor weighs in favor of Prestik.

---

[73]Doc. 9 at 10.

[74]*Benton*, 375 F.3d at 1080.

[75]*OMI*, 149 F.3d at 1097 (citations omitted).

### 5.     States' Interest in Furthering Fundamental Substantive Social Policies

In cases involving foreign parties, this fifth factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations. The Supreme Court has cautioned that 'great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.'"[76] Facts relevant to this inquiry include "whether one of the parties is a citizen of the foreign nation, whether the foreign nation's law governs the dispute, and whether the foreign nation's citizen chose to conduct business with a forum resident."[77] Prestik is a citizen of Canada and Canada's laws will govern this dispute. Thus, although Prestik chose to conduct business with a Kansas resident, based on the first two considerations the Court finds that "an exercise of personal jurisdiction would affect Canada's policy interests."[78] This factor therefore weighs in favor of Prestik.

The Court has previously found that Prestik's contacts with Kansas are limited, barely satisfying the minimum contacts standard.[79] Thus, Prestik need not make a strong showing on the reasonableness factors to defeat personal jurisdiction. As the above discussion demonstrates, a majority of the reasonableness factors weigh in Prestik's favor. Accordingly, because Prestik's contacts with Kansas are weak and because the reasonableness factors discussed above counsel against the exercise of personal jurisdiction, the Court grants Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2).

---

[76]*Benton*, 375 F.3d at 1080 (quoting *OMI*, 149 F.3d at 1097–98).

[77]*Id.* (quoting *OMI*, 149 F.3d at 1097–98).

[78]*Id.* (finding that exercise of personal jurisdiction would affect Canada's policy interests, where defendant was a Canadian resident, Canadian law would govern dispute, and defendant chose to conduct business with a forum resident).

[79]*See supra* Part III.A.

**IT IS THEREFORE ORDERED BY THE COURT** that Prestik's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 5) is **granted**. This case is dismissed without prejudice for lack of personal jurisdiction.

**IT IS SO ORDERED.**

Dated: September 29, 2017

                                                 S/ Julie A. Robinson
                                                 JULIE A. ROBINSON
                                                 UNITED STATES DISTRICT JUDGE